IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANTHONY PRYOR, *et al.*,

        Plaintiffs,

   v.

KATHA HARPER, *et al.*,

        Defendants.

Case No. 2:05-CV-475

JUDGE JOHN D. HOLSCHUH

Magistrate Judge Norah McCann King

### REPORT AND RECOMMENDATION

    This is an action under 42 U.S.C. § 1983 ("Section 1983") by Anthony Pryor ("plaintiff"), an inmate at the Ross Correctional Institution ("RCI") in Chillicothe, Ohio. Plaintiff brings this action on behalf of himself and his minor son, Cameron Pryor. Plaintiff alleges that he has been ordered to cease all attempted contact with Cameron, in violation of his constitutional rights. The remaining defendants in this action are Cameron's maternal grandmother and legal custodian Katha Harper, Fairfield County Assistant Prosecutor Gregg Marx, Fairfield County Prosecutor David L. Landefeld, and RCI Victim Coordinator Lorrie Perry.

    This matter is currently before the Court on the motion for judgment on the pleadings of defendants Marx and Landefeld ("*Motion for Judgment on the Pleadings*"), Doc. No. 57, and defendant Perry's motion for summary judgment ("*Motion for Summary Judgment*"). For the reasons that follow, the Court **RECOMMENDS** that the motions be **GRANTED** in part and **DENIED** in part.

I.      BACKGROUND

Review of the *Complaint* and the exhibits attached thereto reveals the following allegations.

On October 26, 2001, an *Agreed Entry* granting Katha Harper legal custody of Cameron – approved by plaintiff, Cameron's biological mother Gloria Pryor, and the judge of the Court of Common Pleas for Fairfield County, Ohio, Domestic Relations Division – was filed in an action pending in that court.  *Exhibit A* attached to *Complaint*.  In that document, plaintiff was ordered to seek employment, pay child support and to obtain health insurance for Cameron; he was also granted bi-weekly visitation with Cameron beginning November 2, 2001.  *Complaint*, pg. 9.

On October 1, 2002, an *Entry* was apparently filed in the Court of Common Pleas for Fairfield County, Ohio, Juvenile Division, indicating that a paternity test established that plaintiff is Cameron's biological father; plaintiff therefore was adjudged "subject to all parental rights, privileges, and responsibilities concerning Cameron Pryor."  *Exhibit G*.  That *Entry* also granted the motion of the Fairfield County Childrens Service "requesting disposition of court-ordered protective supervision."  *Id.*  However, this Court has not been provided a copy of this *Entry* in its entirety; only the first page has been filed in this Court.

On November 7, 2002, plaintiff was incarcerated, *Complaint*, pg. 10, having been convicted of certain criminal offenses and declared a sexual predator.  *See Exhibit F*.  Plaintiff alleges that, from the outset of his incarceration, he wrote letters to his son and sent him birthday and Christmas cards and presents.  *Complaint*, pg. 10.

In August 2004, Harper filed an adoption petition in an attempt to adopt Cameron.  *Id.*

2

Plaintiff contends that Harper falsely alleged that plaintiff had had no contact with Cameron for one year. *Id.* On September 9, 2004, plaintiff sent a birthday card to Cameron. *Id.* Harper presented the card to Gregg Marx, an Assistant Prosecuting Attorney for Fairfield County, and asked that plaintiff be prevented from contacting Cameron in the future. *Id.* Harper characterized plaintiff's attempts to contact Cameron as harassment. *Exhibit D*, *F*.

On September 16, 2004, Marx sent a notice, allegedly signed by Marx and the prosecutor, defendant Landefeld, to RCI indicating that plaintiff had sent a birthday card to Cameron and that Harper characterized the contact as harassment. *See Exhibit D*. "The Prosecutor's Office further supplied a letter of clarification specifically requesting that [plaintiff] be issued [a] cease correspondence/contact order at the request of the custodial party for Cameron Pryor." *Id.*

On September 23, 2004, Lorrie Perry issued a cease correspondence/contact order, *see Exhibit E*, pursuant to the Ohio Administrative Code, which addresses prisoners' outgoing mail and which provides in pertinent part:

> (F) Inmates are prohibited from sending any letter:
>
> (6) To any person who the inmate has been advised has notified the warden that he or she is being harassed by the inmate and does not want to receive letters from the inmate[.]

Ohio Admin. Code §5120-9-18(F)(6). *See also Exhibit D*.

On May 12, 2005, plaintiff filed this action seeking injunctive and monetary relief, alleging that Harper violated his constitutional rights by preventing him from contacting Cameron and that the other defendants violated his constitutional rights by "unlawfully enforcing Defendant, Katha Harper's wishes, without a Court Order." *Complaint* at 3.

3

On December 29, 2006, defendants Marx and Landefeld filed their motion for judgment on the pleadings, Doc. No. 57, invoking prosecutorial immunity and/or qualified immunity.

On January 31, 2007, defendant Perry filed her motion for summary judgment, Doc. No. 61, which *inter alia,* invokes sovereign immunity and qualified immunity.

## II. STANDARDS

### A. Motions for Judgment on the Pleadings

Rule 12(h)(2) of the Federal Rules of Civil Procedure provides that a Rule 12(b)(6) defense of failure to state a claim upon which relief can be granted can be raised after an answer has been filed by a motion for judgment on the pleadings pursuant to Rule 12(c). *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987); Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 12(c). Where a Rule 12(b)(6) defense is raised pursuant to a 12(c) motion, this Court must apply the standard for a Rule 12(b)(6) motion. *Id.*

Under Rule 12(b)(6), a complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The complaint must be construed in the light most favorable to plaintiff, and its well-pleaded facts must be accepted as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *See Westlake*, 537 F.2d at 858.

### B. Motions for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c). In

4

making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255.

### III. ANALYSIS

Plaintiff brings this action for monetary and injunctive relief pursuant to Section 1983. *Complaint* at 3, 13 (citing 42 U.S.C. § 1983). In order to state a colorable claim under Section 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must further allege that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In the case *sub judice*, plaintiff alleges that defendants violated his right as a parent to enjoy a relationship with his son Cameron as that right is secured by the United States Constitution. *Complaint* at 3, 9-12. Plaintiff sues Lorrie Perry in both her official and individual capacity, Gregg Marx and David L. Landefeld in their official capacities as Fairfield County Prosecutors and in their personal capacities, and Katha Harper "in her capacity as custodian [of Cameron]."

### A. Defendant Perry in Her Official and Personal Capacities

Lorrie Perry argues that the Eleventh Amendment to the United States Constitution offers her absolute immunity against plaintiff's claims for monetary damages brought against her in her official capacity. This Court agrees.

With few exceptions, the Eleventh Amendment to the United States Constitution prohibits individuals from suing the states in federal court. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000); *Popovich v. Cuyahoga County Ct. of Common Pleas*, 227 F.3d 627, 633 (6th Cir. 2000). The Eleventh Amendment, however, does not bar suits against state officials seeking prospective injunctive relief to end continuing violations of federal law. *Popovich*, 227 F.3d at 633; *Wolfel v. Morris*, 972 F.2d 712, 719 (6th Cir. 1992). Plaintiff brings the instant action for monetary damages and prospective injunctive relief under Section 1983, which provides in relevant part:

> Every <u>person</u> who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983 (emphasis added).

The United States Court of Appeals for the Sixth Circuit has explained that:

Congress did not disturb the states' eleventh amendment immunity when it passed § 1983. *Will* [*v. Michigan Dep't of State Police*], 491 U.S. 58, n.10 (1989); *Quern v. Jordan*, 440 U.S. 332 (1979)). Therefore, a state is not a "person" subject to suit under § 1983. *Will*, 109 S. Ct. at 2308. In addition, a suit for damages against a state official in his or her official capacity cannot be maintained pursuant to § 1983. The reason for this was well stated by the Supreme Court:

> Obviously state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the

>   official but rather is a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). As such, it is no different from a suit against the state itself.
>
> *Id.* at 2313.

*Wolfel v. Morris*, 972 F.2d at 718-19. Thus, defendant Perry, acting in her official capacity, is absolutely immune by operation of the Eleventh Amendment from monetary damages.

However, the Eleventh Amendment does not preclude a claim for prospective injunctive relief against defendant Perry acting in her official capacity. *Id.* at 719. "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* (citing *Will*, *supra* at 2313, n.10, quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14 (1985)). *See also Ex parte Young*, 209 U.S. 123, 159- 60 (1908).

Consequently, plaintiff cannot maintain a claim for damages against defendant Perry in her official capacity but may pursue his claim for prospective injunctive relief against this defendant.

Defendant Perry also invokes qualified immunity from liability for monetary damages in connection with claims asserted against her in her personal capacity. Qualified immunity is a purely legal question to be determined prior to trial. *Bell-Bey v. Williams*, 87 F.3d 832, 836 (6th Cir. 1996). The affirmative defense of qualified, or good faith, immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Gardenhire v. Schubert*, 205 F.3d 303, 310-11 (6th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). An official may, however, be

held personally liable for civil damages for unlawful official action if that action was not objectively reasonable in light of the legal rules that were "clearly established" at the time it was taken. *Id.* at 311 (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). This "objective legal reasonableness" standard analyzes claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene. *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The United States Court of Appeals for the Sixth Circuit evaluates claims to qualified immunity using a two-part[1] inquiry: (1) whether, considering the allegations in a light most favorable to the injured party, a constitutional right has been violated and, if so, (2) whether that right was clearly established such that reasonable officials would know that their conduct

---

[1] The United States Court of Appeals for the Sixth Circuit occasionally employs a three-step qualified immunity analysis, as opposed to the two-step analysis set forth here. As two recent opinions indicate, both the two-step approach and the three-step approach can be said to capture the holding of *Saucier v. Katz*, 533 U.S. 194 (2001). *Compare Dunigan v. Noble*, 390 F.3d 486, 491 n.6 (6th Cir. 2004) (two-step approach), with *Sample v. Bailey*, 409 F.3d 689, 696 n.3, 2005 U.S. App. LEXIS 83286 (6th Cir. 2005) (three-step approach). The third step is "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004) (internal quotation omitted). In cases subsequent to *Saucier* the United States Supreme Court has not formally broken up the two steps prescribed by *Saucier* into three steps, *see, e.g., Brosseau v. Haugen*, 543 U.S. 194 (2004); *Groh v. Ramirez*, 540 U.S. 551, 563 (2004), but the three-step approach may in some cases increase the clarity of the proper analysis. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311. n.2 (6th Cir. 2005). In this action, however, all parties rely on the two-part analysis and, even if the tripartite method were employed, this Court would not reach the third prong based on its conclusion that the right relied upon in this action was not clearly established.

violated the right. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) and *Myers v. Potter*, 422 F.3d 347 (6th Cir. 2005)). When the defense of qualified immunity is raised, it is the plaintiff's burden to prove that the state officials are not entitled to qualified immunity. *Id.* (citing *Gardenhire*, 205 F.3d at 311).

With regard to the first inquiry, defendant Perry argues (as did defendants Marx and Landefeld) without citation to any authority, that plaintiff's allegations simply do not implicate the United States Constitution. This argument is mistaken. More than fifty years ago, the United States Supreme Court recognized that "it is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944); *accord Reno v. ACLU*, 521 U.S. 844, 865 n.31 (1997). More recently, the Supreme Court has recognized that the parental right to raise children in a manner that the parent sees fit is deeply entrenched:

> The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition.

*Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972); *see also Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'comes to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.' " quoting *Kovacs v. Cooper*, 336 U.S. 77, 95 (1949) (Frankfurter, J., concurring)).

To be sure, there are circumstances in which the state's interests may trump the rights of parents. Whether the facts presented here -- *i.e.,* a parent without legal custody and with only

9

limited visitation rights prior to having been convicted and labeled a sexual predator-- qualify as such, no party addresses. The Court expresses no opinion as to whether plaintiff's rights as a parent were violated by application of the prison regulation limiting his ability to correspond with Cameron because the Court also concludes that any such constitutional right was not clearly established. *See Bell-Bey*, 87 F.3d at 836 ("If the law which the defendant is alleged to have violated is clearly established, then the qualified immunity defense should fail and discovery should proceed. If the law is not clearly established, the defendant is immune.").

In order to be "clearly established," a constitutional right must be established in a particularized, relevant sense: the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Creighton*, 483 U.S. at 640. "In the light of pre-existing law the unlawfulness must be apparent." *Id.* In determining whether a right is clearly established, "we look first to the decisions of the Supreme Court, then to the decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002).

In the case *sub judice*, when ordering plaintiff to cease writing letters to Cameron, the governmental defendants all relied upon Ohio Admin. Code §5120-9-18(F)(6), which requires prison officials to prevent an inmate from sending letters to any individual who complains that the mail is harassing. Harper, who is charged with Cameron's care,[2] complained that letters from plaintiff constituted harassment. She went to prosecuting authorities with her complaint and,

---

[2] The Ohio Revised Code § 2151.011(B)(19) defines "legal custody" as "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities."

after evaluation of that complaint, the defendant prosecutors informed the prison that the letters were perceived as threatening by the child's legal custodian. The defendant prison administrator, acting pursuant to Ohio Admin. Code §5120-9-18(F)(6), then ordered plaintiff to cease sending letters to Cameron.

This Court cannot say that a reasonable official should have known that relying on the facially valid prison regulation violated a prisoner's constitutional rights. Indeed, the United States Court of Appeals for the Sixth Circuit has specifically held that "a reasonable official could have thought that relying on the facially valid regulation here did not violate the prisoners' constitutional rights." *Wolfel v. Morris*, 972 F.2d at 720. "That being the case, the prisoners cannot show that their constitutional 'rights were so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.'" *Id.* (citing *Dominique v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987)).

Consequently, plaintiff cannot show that his particular parental rights were so clearly established when he was ordered to cease writing letters to Cameron that any officer in defendants' positions, measured objectively, would have clearly understood that he or she was under an affirmative duty to refrain from enforcing the prison regulation against plaintiff. Accordingly, defendant Perry is entitled to qualified immunity against all claims for monetary damages asserted against her in her personal capacity.[3]

---

[3] If defendants Marx and Landefeld were not entitled to prosecutorial immunity, this Court would have no hesitation in conferring upon them, for these same reasons, qualified immunity as well.

**B.     Defendants Marx and Landefeld in their Official and Personal Capacities**

Defendants Gregg Marx and David L. Landefeld argue that they are not subject to suit under Section 1983 based on prosecutorial immunity. These defendants are partially correct.

The United States Supreme Court has held that prosecutors sued in their personal capacities are absolutely immune from monetary damages "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Actions falling within the scope of the so-called advocacy function are defined as those "intimately associated with the judicial phase of the criminal process[.]" *Id.* at 430. Furthermore, such immunity cannot be overcome by allegations of malice. *Id.* at 427. Courts use a "functional approach" to determine whether prosecutorial immunity is available to protect an official from liability for the particular activities alleged to have violated a plaintiff's rights. *Id.* Thus, this Court must look to the "nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229(1988)). Furthermore, this Court must focus "on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." *Id.* 509 U.S. at 271 (citing *Imbler*, *supra*).

While it is not always clear whether a given action falls within the prosecutor's advocacy function, there is little doubt that evaluation of a citizen complaint and the decision to take alternative action short of prosecution does. *See Boone v. Kentucky*, 72 Fed. Appx. 306, 307 (6th Cir. 2003) ("The decision on whether or not to prosecute is unquestionably advocacy and is at the heart of the *Imbler* holding."); *Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997) (the immunity extends to a prosecutor's decision on whether or not to prosecute a case); *Coon v.*

*Froehlich*, 573 F. Supp. 918 (S.D. Ohio 1983) ("prosecutors must be absolutely immune from civil suit for decisions not to prosecute because of their absolute immunity for decisions to initiate criminal proceedings). In this case, plaintiff alleges that defendant Harper took her complaint of harassment by plaintiff to the county prosecuting authorities. Defendants Marx and Landefeld apparently opted not to prosecute plaintiff and instead to forward Harper's complaints to prison administrators. These alleged actions, *i.e.*, evaluation of a citizen complaint and the determination to pursue an alternative to prosecution fall within a prosecutor's advocacy role sufficient to confer absolute immunity from liability for monetary damages.

With regard to plaintiff's claims for damages against Marx and Landefeld in their official capacities, the United States Court of Appeals for the Sixth Circuit has held that, because city prosecutors act as state agents when prosecuting state criminal laws or enforcing state policy, suits against them in their official capacity are to be treated as suits against the state. *Pusey v. City of Youngstown*, 11 F.3d 652, 657-58 (6th Cir. 1993). *See also Boone v. Kentucky*, 72 Fed. Appx. 306, 2003 U.S. App. LEXIS 15320 (6th Cir. Ky. 2003) (county prosecutor is arm of the state in prosecuting or declining to prosecute state criminal offenses); *Adams v. Spencer*, Case No. C-3-96-102, 1997 U.S. Dist. LEXIS 23781, *22 (S.D. Ohio Sept. 8, 1997) (county prosecutor held immune under reasoning of *Pusey*). Of course, as explained *supra*, a suit against a state is not cognizable under Section 1983. *See also id.* (citing *Will*, *supra*, 491 U.S. at 71).

Accordingly, the Court concludes that defendants Marx and Feldman are entitled to absolute prosecutorial immunity for plaintiff's claims for damages against them in their official and personal capacities and for plaintiff's claims for damages against them in their official capacities. However, plaintiff's request for prospective injunctive relief against these two

13

defendants in their official capacity may proceed. *See Exparte Young,* 209 U.S. 123.

      **C.     Defendant Harper**

Although Katha Harper, who filed an answer without the assistance of counsel, Doc. No. 18, has not moved for dismissal from this action, in the interests of justice, this Court *sua sponte* concludes that plaintiff's claims against her cannot survive. Harper, as grandmother and legal custodian of Cameron, is simply not amenable to suit pursuant to Section 1983. Private citizens are not ordinarily subject to suit under Section 1983 because they are not acting under color of state law. *Boykin v. Van Buren Twp.*, 479 F.3d 444, 452 (6th Cir. 2007) (citing *Tahfs v Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). The United States Court of Appeals for the Sixth Circuit applies three tests to determine whether private conduct is attributable to the state--the public function test, the state compulsion test, and the nexus test:

> The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state…. The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. Finally, the nexus test requires a sufficiently close relationship (*i.e.*, through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state.

*Id.* (citing *Tahfs*, *supra*).

The Court concludes that defendant Harper's alleged conduct -- *i.e.,* reporting harassment of a minor for whom she is legally responsible -- to a county prosecutor cannot, under any of these tests, be considered state action. Accordingly, Katha Harper, a private citizen, is not subject to liability under Section 1983. All claims against her are hereby **DISMISSED.**

**WHEREUPON**, it is **RECOMMENDED** that the *Motion for Judgment on the Pleadings*, Doc. No. 57, and the *Motion for Summary Judgment*, Doc. No. 61, be **GRANTED** in part and **DENIED** in part.  Specifically, it is **RECOMMENDED** that all claims for monetary damages be dismissed against defendants Gregg Marx, David L. Landefeld and Lorrie Perry, leaving only a cause of action against them for prospective injunctive relief in their official capacities.  It is **FURTHER RECOMMENDED** that all claims against defendant Katha Harper be **DISMISSED.**

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within ten (10) days, file and serve on all parties objections to the *Report and Recommendation*, and the part thereof in question, as well as the basis for the objection thereto. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).  Responses to objections must be filed within ten (10) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn,* 474 U.S. 140 (1985);  *Harris v. City of Akron,* 20 F.3d 1396 (6th Cir. 1994);  *Smith v. Detroit Fed'n of Teachers, Local 231, Am. Fed'n of Teachers, AFL-CIO,* 829 F.2d 1370 (6th Cir. 1987).

<u>August 3, 2007</u>                                                <u>*s/Norah McCann King*</u>
Date                                                                                                   Norah M<sup>c</sup>Cann King
                                                                       United States Magistrate Judge